No. 13-55678

# IN THE UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

DAVID M. EMANUEL, *et al.*,

Plaintiff-Appellant,

v.

LOS ANGELES LAKERS, INC.,

Defendant-Appellee.

On Appeal from the United States District Court
for the Central District of California, Case No. 12-cv-09936
The Honorable George H. Wu, U.S. District Judge

## BRIEF OF TWITTER, INC. AND PATH, INC.
## AS *AMICI CURIAE* IN SUPPORT OF APPELLEE

David H. Kramer
WILSON SONSINI GOODRICH & ROSATI
650 Page Mill Road
Palo Alto, CA 94304-1050
(650) 493-9300

Brian M. Willen
WILSON SONSINI GOODRICH & ROSATI
1301 Avenue of the Americas
40th Floor
New York, NY 10019-6022
(212) 999-5800

*Counsel for Amici Curiae*

November 21, 2013

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Rule 29(c)(1) of the Federal Rule of Appellate Procedure, Amici make the following disclosures. Twitter, Inc. states that it does not have a parent corporation and that no publicly held corporation owns 10% or more of its stock. Path, Inc. states that it does not have a parent corporation and that no publicly held corporation owns 10% or more of its stock.

# TABLE OF CONTENTS

**Page**

INTEREST OF *AMICI* ................................................................. 1

SUMMARY OF ARGUMENT ...................................................... 3

ARGUMENT ............................................................................. 5

    I.    Nuisance TCPA Litigation Is A Burgeoning Problem
          That Leads To Coercive Settlements And Threatens To
          Chill Legitimate Business Communications ............................ 5

    II.   To Survive A Motion To Dismiss, A TCPA Plaintiff
          Must Allege Facts Making It Plausible To Conclude
          That The Defendant Used An "Automatic Telephone
          Dialing System" ..................................................................... 10

CONCLUSION ......................................................................... 18

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Ashcroft v. Iqbal,*
  556 U.S. 662 (2009) ....................................................................*passim*

*Bell Altantic Corp. v. Twombly,*
  550 U.S. 544 (2007) ....................................................................*passim*

*Castano v. Am. Tobacco Co.,*
  84 F.3d 734 (5th Cir. 1996) .................................................. 9

*Friedman v. Massage Envy Franchising, LCC.,*
  No. 3:12-cv-02962, 2013 U.S. Dist. LEXIS 84250 (S.D.
  Cal. June 13, 2013)................................................................. 15

*Ibey v. Taco Bell Corp.,*
  No. 12-cv-0583-H, 2012 U.S. Dist. LEXIS 91030 (S.D.
  Cal. Jun. 18, 2012) ............................................................... 15

*In re Rhone-Poulenc Rorer, Inc.,*
  51 F.3d 1293 (7th Cir. 1995) ............................................... 9

*Knutson v. Reply!, Inc.,*
  No. 10-cv-1267, 2011 U.S. Dist. LEXIS 7887 (S.D. Cal.
  Jan. 26, 2011) ....................................................................... 15

*Moss v. Twitter,*
  No. 3:11-cv-00906 (S.D. Cal. filed Apr. 28, 2011) ................ 8

*Rose v. Bank of Am. Corp.,*
  No. 5:11-cv-02390 (N.D. Cal. filed Sept. 27, 2013) .............. 7

*Satterfield v. Simon & Shuster, Inc.,*
  569 F.3d 946 (9th Cir. 2009) ..........................................5, 11

*Saunders v. NCO Fin. Sys.,*
  910 F. Supp. 2d 464 (E.D.N.Y. 2012) .................................. 8

*Sterk v. Path*,
   No. 1:13-cv-02330, 2013 U.S. Dist. LEXIS 140017 (N.D.
   Ill. Sept. 26, 2013) ............................................................... 15

## STATUTES

47 U.S.C. § 227(a) ..................................................................... 11

47 U.S.C. § 227(b)(1)(A) ............................................................ 11

47 U.S.C. § 227(b)(3) .................................................................. 7

## LEGISLATIVE MATERIALS

137 Cong. Rec. 35,302 (Nov. 26, 1991) ...................................... 12

H.R. Rep. No. 101-633 (1990) ................................................... 12

H.R. Rep. No. 102-317 (1991) ................................................... 12

S. Rep. No. 102-178 (1991) ............................................... 5, 11, 12

## MISCELLANEOUS

Arent Fox, Alert, *FCC Seeks Comment on Two Petitions
   Related to Recent TCPA Rule Changes* (Nov. 5, 2013),
   http://www.arentfox.com/newsroom/alerts/fcc-seeks-
   comment-two-petitions-related-recent-tcpa-rule-
   changes ................................................................................. 6

*How to Sue A Telemarketer*, Impact Dialing (May 20, 2013),
   http://www.impactdialing.com/2012/05/how-to-sue-a-
   telemarketer/ ....................................................................... 8

Monica Desai et al, *A TCPA for the 21st Century*, 8 Int'l J.
   Mobile Marketing 75 (2008) ................................................ 13

*Suing Telemarketers—Simple and Cheap*, KilltheCalls.com,
   http://www.killthecalls.com/suing-telemarketers.php
   (last visited Nov. 21, 2013) ................................................. 8

U.S. Chamber, Institute for Legal Reform, The Juggernaut
of TCPA Litigation (Oct. 2013),
http://www.instituteforlegalreform.com/uploads/sites/1/
TheJuggernautofTCPALit_WEB.PDF......................................6, 7, 8, 9

## INTEREST OF *AMICI*[1]

Amici are young technology companies concerned about abuses of the Telephone Consumer Protection Act ("TCPA"), a well-intentioned federal statute that is increasingly being misused by plaintiffs' lawyers to seek windfall damages and coercive settlements from a wide array of legitimate businesses.

Amicus Twitter Inc. allows users to post short messages—known as "Tweets"—on Twitter's website, where they can be read by other Twitter users. Twitter allows users to receive Tweets as text messages on their cell phones. If users decide that they want to stop receiving such text messages, they may send a "stop message" to Twitter. In response, Twitter will send a text to the user confirming the texts will cease. On the basis of one such confirmatory text, a plaintiff (represented by the same lawyers representing the plaintiff in this case) sued on behalf of a putative class, seeking millions of dollars for alleged TCPA violations.

---

[1] No counsel for any party authored this brief in whole or part; no party or counsel made a monetary contribution intended to fund its preparation or submission; and no person other than Amici and their counsel made such a contribution. All parties have consented to filing of this brief.

Amicus Path, Inc. is a free social networking service that allows users to share private messages, photos, videos, stickers, cultural experiences, and thoughts with a circle of up to 150 friends and family members. Users may invite contacts to join this circle by sending them a text message. Because Path facilitates users sending such text message invitations, it has been dragged into three putative class action lawsuits under the TCPA. The plaintiffs in each of those cases have demanded many times more in statutory damages than Path has earned in its entire existence.

Based on these experiences, Amici have a powerful interest in ensuring that the TCPA is properly applied, rather than being wielded as an extortionist club in cases it was never meant to cover. Amici submit this brief to explain how the TCPA is being abused in a variety of cases (including this one) and how those abuses threaten to chill a range of legitimate communications. Amici seek to ensure that defendants have means to dispose of nuisance TCPA cases quickly and efficiently—without having to endure the burdens of discovery and face the threat of potentially catastrophic liability.

## SUMMARY OF ARGUMENT

The TCPA, a statute intended to curb vexatious telemarketing practices, is being transformed into a vehicle for vexatious lawsuits. This case illustrates the problem—and offers this Court an important opportunity to help bring it under control.

While attending a Los Angeles Lakers' basketball game, the plaintiff (David Emanuel) sent a text message to the team, which he hoped would be displayed on the arena scoreboard. In response, the Lakers sent Emanuel a text confirming that his request had been received. Based on that routine exchange, Emanuel sued the team seeking $1,500 in damages for himself and purporting to represent a class of countless other "victims" who demand similar windfalls. It seems hard to believe that a case like this could even get filed in a federal court. But it exemplifies the temptation that the TCPA—with its promise of statutory damages unconnected to any showing of actual harm—offers to opportunistic plaintiffs' lawyers.

This is not what Congress had in mind when it enacted the TCPA. The statute was never meant to regulate all phone calls or text messages, much less to spawn a litigation feeding frenzy. It was intended to

prevent a specific set of abuses—principally, telemarketers' use of automated telephone dialing systems to make unsolicited phone calls to unwilling recipients. That is why a crucial requirement of the TCPA is that the defendant must have used an "automatic telephone dialing system" ("ATDS"), a term expressly and narrowly defined by the statute.

In this case, however, the plaintiff alleged no facts suggesting that the Lakers actually used an ATDS. This has become a distressingly common pattern in TCPA litigation. Plaintiffs' complaints often do nothing more than incant the statutory ATDS requirement, without pleading any facts to support that legal conclusion. Plaintiffs do so even in cases (like this one) where it is clear that an ATDS was *not* used. That approach is legally unsupportable and leads to pernicious consequences. If plaintiffs can get cases to discovery simply by asserting that an ATDS was used, the threat of massive damages may force defendants to settle regardless of the suits' merits. That makes companies into potential targets any time they try to communicate with their customers—or even when they allow their users to communicate with their own friends of family—through phone calls or text messages. Well-

meaning businesses may face ruinous liability even where no one has been harmed.

To prevent these abuses, Amici urge the Court to hold that a TCPA plaintiff must plead facts making plausible (and ultimately prove) that the defendant actually used an ATDS—a device that has the capacity to *generate* telephone numbers randomly or sequentially and to dial such numbers. Such a holding will go a long way to ensuring that the TCPA is applied in the limited way that Congress contemplated and is not used to threaten legitimate communications and stifle technological innovation.

## ARGUMENT

### I.    Nuisance TCPA Litigation Is A Burgeoning Problem That Leads To Coercive Settlements And Threatens To Chill Legitimate Business Communications

The TCPA was enacted in 1991 "in response to an increasing number of consumer complaints arising from the increased number of telemarketing calls" that were "a 'nuisance and an invasion of privacy.'" *Satterfield v. Simon & Shuster, Inc.*, 569 F.3d 946, 954 (9th Cir. 2009) (quoting S. Rep. No. 102-178, at 1 (1991)). In this case, however, and in many others like it—including cases that have been filed against Ami-

ci—the statute is being used in ways that have little to do with tele-marketing or invasions of privacy. The TCPA has become a favored tool of the plaintiffs' bar, which is using it to pursue windfall damages in cases involving no privacy invasion and no actual harm.

While this case is a clear-cut instance of nuisance TCPA litigation, it is far from an isolated example. The volume of TCPA lawsuits has dramatically increased in recent years. In the last year alone, approximately 1,200 new cases were filed.[2] More and more, such cases are not being filed against the statute's original target: telemarketers. Instead, companies in every sector of the economy—footwear retailers, apparel manufacturers, fast-food restaurants, banks, debt collectors, electronic payment services, and online social networks—are being targeted. *See* U.S. Chamber, Institute for Legal Reform, The Juggernaut of TCPA Litigation at 1 (Oct. 2013) ("TCPA Juggernaut"), http://www.institutefor legalreform.com/uploads/sites/1/TheJuggernautofTCPALit_WEB.PDF.

---

[2] *See* Arent Fox, Alert, *FCC Seeks Comment on Two Petitions Related to Recent TCPA Rule Changes* (Nov. 5, 2013), http://www.arentfox.com/newsroom/alerts/fcc-seeks-comment-two-petitions-related-recent-tcpa-rule-changes.

The reasons for this litigation explosion are not hard to see. The TCPA creates a private right of action along with a statutory penalty of $500 to $1,500 for each call, text, or fax. 47 U.S.C. § 227(b)(3). Plaintiffs are not required to prove that they suffered any actual harm or that that the defendant acted with any culpable intent. Given this scheme, especially when harnessed to a class action procedure where the plaintiff purports to represent all other people who received similar calls or texts, potential damages in TCPA cases can soar beyond any reason.

In this case, for example, the Lakers' simple act of sending confirmatory text messages to spectators could expose them to tens of millions of dollars in statutory damages liability. To take an even more extreme example, in a recent TCPA lawsuit filed against Bank of America, the plaintiffs claimed damages in excess of $3.5 *billion* based on a purported class of 7.7 million people who received text messages and calls related to mortgages and credit cards. *See* TCPA Juggernaut at 4 (discussing *Rose v. Bank of Am. Corp.*, No. 5:11-cv-02390 (N.D. Cal. filed Sept. 27, 2013)).

The prospect of such windfall damages awards has proven all too enticing for the plaintiffs' bar. A cottage industry of lawyers has sprung

up to pursue TCPA cases, often recruiting friends or colleagues to act as "victims." TCPA Juggernaut at 4. This case illustrates the problem. The plaintiff, David Emanuel, is apparently a former employee of the plaintiffs' firm that filed the suit, and they previously collaborated on a similar lawsuit against the NFL. This same firm has filed numerous other TCPA suits, including one against Twitter. *See Moss v. Twitter, Inc.*, No. 11-cv-0906 (S.D. Cal. filed Apr. 28, 2011). Some individuals are even making a living as TCPA plaintiffs, with websites instructing consumers about how to "set up" a lawsuit to maximize potential damages before negotiating a quick settlement. *See* TCPA Juggernaut at 4.[3] All of this confirms the truth of one court's observation that "remedial laws can themselves be abused and perverted into money-making vehicles for individuals and lawyers." *Saunders v. NCO Fin. Sys.*, 910 F. Supp. 2d 464, 465 (E.D.N.Y. 2012).

The massive statutory damages that plaintiffs can seek in TCPA class actions exert an *in terrorem* effect. The risk of ruinous liability—

---

[3] *E.g., How to Sue A Telemarketer*, Impact Dialing (May 20, 2013), http://www.impactdialing.com/2012/05/how-to-sue-a-telemarketer/; *Suing Telemarketers—Simple and Cheap*, KilltheCalls.com, http://www.killthecalls.com/suing-telemarketers.php (last visited Nov. 21, 2013).

which may even exceed the defendant's annual revenue or net worth—puts immense pressure on defendants to settle cases that are entirely without merit. Courts have recognized this pattern in similar situations. *See, e.g.*, *Castano v. Am. Tobacco Co.*, 84 F.3d 734, 746 (5th Cir. 1996) ("[C]lass certification creates insurmountable pressure on defendants to settle, whereas individual trials would not…. The risk of facing an all-or-nothing verdict presents too high a risk, even when the probability of an adverse judgment is low."); *In re Rhone-Poulenc Rorer, Inc.*, 51 F.3d 1293, 1298 (7th Cir. 1995) (Posner, J.) ("[Defendants] may not wish to roll these dice. That is putting it mildly. They will be under intense pressure to settle."). Eye-popping settlements are becoming a reality in TCPA litigation. In the last two years alone, there have been at least a dozen TCPA settlements of greater than $5 million. TCPA Juggernaut at 2. The Bank of America case discussed above recently settled for $32 million, with the defendant agreeing not to oppose plaintiffs' counsel fees up to 25% of the settlement (or $8 million). *Id*. at 3.

The success of plaintiffs' lawyers in such cases only encourages more lawsuits. And those suits are increasingly targeting communications far afield from the kinds of telemarketing calls that animated the

TCPA—from the confirmatory text message at issue here, to invitations that Path users can initiate to their friends and family, to receipts sent via text message to users of electronic payment services. Unless courts impose real checks on abusive TCPA litigation, strike suits like these will continue to proliferate, defendants will be compelled into coercive settlements, and legitimate uses of text messaging by innovating companies and their users will be significantly threatened.

## II.    To Survive A Motion To Dismiss, A TCPA Plaintiff Must Allege Facts Making It Plausible To Conclude That The Defendant Used An "Automatic Telephone Dialing System"

This background makes clear the need for courts to be vigilant about policing TCPA lawsuits and weeding out those that lack merit. This case is a paradigmatic example of a vexatious claim. Mr. Emanuel suffered no invasion of privacy or any other actual injury, and he appears to have sued the Lakers not because the team engaged in wrongful conduct but instead because his lawyers see the prospect of a windfall damages recovery on behalf of a class of artificial "victims."

The district court's ruling that plaintiff's claim fails because he consented to receiving the text message at issue was an appropriate way of disposing of this case. But there is another way to scuttle frivo-

lous TCPA suits like this one: requiring plaintiffs to plausibly allege, not merely assert, that the defendant actually used the kind of automated dialing equipment that the statute requires. The provision of the TCPA at issue here—and in most of the nuisance suits under the statute—applies only to calls made using an "automatic telephone dialing system or an artificial or prerecorded voice." 47 U.S.C. § 227(b)(1)(A). This provision narrowly regulates the use of particular kinds of automated calling technology that were typically used by telemarketers to make unsolicited phone calls to unwilling recipients. *See* S. Rep. 102-178, at 1 (explaining TCPA's intent "to protect the privacy interests of residential telephone subscribers by placing restrictions on unsolicited, automated telephone calls to the home").[4]

To that end, Congress carefully defined ATDS to mean "equipment which has the capacity" both (A) "to store or produce telephone numbers to be called, using a random or sequential number generator" and (B) "to dial such numbers." 47 U.S.C. § 227(a). This limited definition serves an important purpose. It ensures that not every unwanted phone

---

[4] This Court has held that unsolicited texts sent to cell phones constitute "calls" for TCPA purposes. *Satterfield*, 569 F.3d at 954.

call becomes a federal case. It confines potential TCPA claims to those involving specialized equipment that is capable of randomly or sequentially generating and dialing telephone numbers. Congress was concerned that by using such equipment intrusive telemarketing calls might reach unlisted phone numbers, hospitals, or emergency organizations. *See*, *e.g.*, 137 Cong. Rec. 35,302 (Nov. 26, 1991); H.R. Rep. No. 101-633, at 3 (1990); H.R. Rep. No. 102-317, at 10 (1991); S. Rep. No. 102-178, at 2. To make out a claim under this provision, therefore, a plaintiff must establish—at a minimum—that the equipment is able to generate telephone numbers.

Plaintiffs in many cases have tried to expand the breadth of the TCPA by giving a broad construction of the ATDS provision that is divorced from the text and common sense. Plaintiffs frequently argue, for example, that equipment constitutes an ATDS if the device could somehow be modified in the future (in some unstated way) to provide the capacity to generate random or sequential numbers, even if that capacity is lacking at the time of the calls in question. By that logic, any personal smartphone (indeed, any toaster) could, with unspecified future software and hardware attachments, meet the definition, and render any

calls or texts from those devices actionable under the TCPA. That is an absurd position, yet it has been advanced repeatedly by plaintiffs in these cases. *See* Monica Desai et al, *A TCPA for the 21st Century*, 8 Int'l J. Mobile Marketing 75, 79-82 (2008). This Court can scuttle that fallacious argument by making clear that the TCPA applies only to devices that have the *current* capacity to randomly or sequentially generate numbers to be called at the time of the call at issue. *See id.*

The requirement that a plaintiff establish that the defendant used an ATDS (properly defined) is crucial at each stage of the case—starting with the pleading stage. The Supreme Court has made clear that to survive a motion to dismiss, a plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Bell Altantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). That is because the "tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Instead, legal conclusions "must be supported by factual allegations," and those allegations, taken as true, must "plausibly

give rise to an entitlement to relief." *Id.*; *see also Twombly*, 550 U.S. at 570 (plaintiffs must plead "enough facts to state a claim to relief that is plausible on its face").

In articulating these pleading standards, the Supreme Court understood the realities of modern civil litigation, in which "the threat of discovery expense will push cost-conscious defendants to settle even anemic cases before reaching those proceedings." *Twombly*, 550 U.S. at 559. The Court explained that "something beyond the mere possibility of [liability] must be alleged, lest a plaintiff with a largely groundless claim be allowed to take up the time of a number of other people, with the right to do so representing an *in terrorem* increment of the settlement value." *Id.* at 557-558 (internal quotation marks omitted); s*ee also Iqbal*, 556 U.S. at 678-79 ("Rule 8 … does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.").

The reality of abusive TCPA litigation, as described above, underscores the importance of hewing carefully to the requirements of *Twombly* and *Iqbal* in this context. Plaintiffs must plausibly allege all of the elements of their TCPA claims, including the requirement that the defendant used an ATDS. To avoid dismissal at the pleading stage,

-14-

a plaintiff must include sufficient factual allegations to make it plausible that the defendant actually made the calls or text messages at issue using an ATDS as that term is defined in the statute.[5]

In this case, it is clear that plaintiff has not made (and cannot make) such allegations. Emanuel's complaint does nothing more than repeat the statutory definition of an ATDS. It offers no facts whatsoever to support the conclusion that the Lakers actually used an ATDS to send the text message at issue. ER 5 (¶¶ 20-21). Under *Twombly* and *Iqbal*, this will not do. Plaintiff has offered precisely the kind of "threadbare recital" of the elements of a claim that is not entitled to a presumption of truth and cannot state a viable claim. To the contrary, it is clear from plaintiff's complaint that the text message at issue was not

---

[5] Most district courts that have been faced with this situation have correctly applied the plausibility standard to dismiss TCPA complaints that lacked proper allegations that the defendant used an ATDS. *See, e.g.*, *Friedman v. Massage Envy Franchising, LCC.*, No. 3:12-cv-02962, 2013 U.S. Dist. LEXIS 84250, at *6 (S.D. Cal. June 13, 2013); *Ibey v. Taco Bell Corp.*, No. 12-CV-0583-H, 2012 U.S. Dist. LEXIS 91030, at *9 (S.D. Cal. Jun. 18, 2012); *Knutson v. Reply!, Inc.*, No. 10-cv-1267, 2011 U.S. Dist. LEXIS 7887, at *5 (S.D. Cal. Jan. 26, 2011). But other courts have allowed TCPA claims to survive motions to dismiss despite the lack of plausible ATDS allegations. *See, e.g., Sterk v. Path, Inc.,* No. 13 C 2330, 2013 U.S. Dist. LEXIS 140017, at *4-5 (N.D. Ill. Sept. 26, 2013). No appellate court has yet addressed the issue, underscoring the importance of this case.

sent by the Lakers using an ATDS. That message was sent in direct response to plaintiff's own text—not by using a "random or sequential number generator." ER 5 (¶¶ 18-19). Emanuel's TCPA claim can and should be dismissed for this reason alone.

This Court should address this issue (which was briefed by the parties and discussed by the district court, ER 16) both because it offers a simple way of resolving this case and because it is critically important for many other TCPA cases. Plaintiffs regularly sue under the TCPA without alleging any facts suggesting, much less making it plausible, that the defendant actually used an ATDS to send the messages at issue.[6] That is the approach taken by the plaintiffs in each of the putative class action TCPA lawsuits that have been filed against Amici.[7]

---

[6] *See, e.g.*,  Compl. ¶ 15, *Moss v. Twitter*, No. 3:11-cv-00906 (S.D. Cal. Apr. 28, 2011), ECF No. 1; Am. Compl. ¶ 19, *Ibey v. Taco Bell Corp.*, No. 12-cv-00583 (S.D. Cal. May 14, 2012), ECF No. 13; Compl. ¶¶ 16, 29, *Friedman v. Massage Envy Franchising, LCC.*, No. 3:12-cv-02962  (S.D. Cal. Dec. 12, 2012), ECF No. 1.

[7] *See* Compl. ¶¶ 22-23, *Montes v. Path, Inc.*, No. 3:13-cv-02218 (S.D. Cal. Sept. 16, 2013), ECF No. 1; Am. Compl. ¶ 18, *Smeets v. Path, Inc.*, No. CV 13-03057 (N.D. Cal. Aug. 1, 2013), ECF No. 21; Compl. ¶ 22, *Sterk v. Path*, No. 1:13-cv-02330 (N.D. Ill. Mar. 28, 2013), ECF No. 1.

That is no accident, as it is clear in nearly all of these cases (as it is here) that they do not, in fact, involve the type of intrusive automated telemarketing messages that Congress sought to prohibit when it enacted the TCPA. For example:

- The plaintiffs in *Moss* brought a class action against Twitter on the basis of individual text messages they received from Twitter confirming their requests to no longer receive Tweets via text that they had previously signed up to receive. Compl. ¶¶ 10-14, *Moss,* No. 3:11-cv-00906 (dismissed).

- In three separate class actions, plaintiffs have sued Path based on text messages initiated by other Path users that invited their friends and acquaintances to join Path and share photos using the service. Compl. ¶ 15, *Smeets*, No. CV 13-03057 (dismissed); Am. Compl. ¶¶ 10-14, *Montes*, No. 3:13-cv-02218 (pending); Compl. ¶¶ 12-13, *Sterk*, No. 1:13-cv-02330 (pending).

- A plaintiff sued Square (an electronic payment service) in a class action based on a single receipt that was sent to his number via text message after a user made a purchase using Square and requested a receipt be sent to that number. Compl. ¶¶ 16-17, *Ball v. Square, Inc.*, No. 3:12-cv-06552-SC (N.D. Cal. Dec. 28, 2012), ECF No. 1 (dismissed).

Defendants should not have to engage in expensive burdensome discovery to dispose of cases like these. They should be able to do so at the pleading stage under the rules set out in *Twombly* and *Iqbal*.

Properly applying the plausibility standard to ATDS allegations would go a long way to limiting the abusive potential of TCPA litigation

-17-

and confining the statute to its proper sphere. If defendants cannot dispose of cases that lack sufficient ATDS allegations, virtually any company that uses text messaging to communicate with its users may be threatened with broad liability, and defendants in those cases may continue to be coerced into settlements rather than risk the fight against claims alleging millions, or even billions, of dollars in damages. This case offers an ideal opportunity for this Court to put a stop to this destructive cycle.

## CONCLUSION

For these reasons, Amici submit that the Court should affirm the decision below on the grounds that the plaintiff failed to plead facts plausibly suggesting that the Lakers sent the text message at issue using an ATDS. That holding would not only be a proper resolution of this case, it would help prevent other abusive TCPA lawsuits by allowing defendants to dispose of meritless cases prior to discovery.

DATED:  November 21, 2013          Respectfully submitted,

*/s/ David H. Kramer*
David H. Kramer
WILSON SONSINI GOODRICH & ROSATI
PROFESSIONAL CORPORATION
650 Page Mill Road

-18-

Palo Alto, CA 94304
(650) 493-9300

Brian M. Willen
Wilson Sonsini Goodrich & Rosati
Professional Corporation
1301 Avenue of the Americas
40th Floor
New York, NY 10019-6022
(212) 999-5800

*Counsel for Amici Curiae*
*Twitter, Inc. and Path, Inc.*

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitations of Fed. R. App. P. 32(a)(7)(B) because it contains 4,134 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the typestyle requirement of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Century Schoolbook font.

DATED:  November 21, 2013          Respectfully submitted,


　/s/ David H. Kramer　　　　　　　
David H. Kramer
WILSON SONSINI GOODRICH & ROSATI
650 Page Mill Road
Palo Alto, CA 94304
(650) 493-9300

Brian M. Willen
WILSON SONSINI GOODRICH & ROSATI
1301 Avenue of the Americas
40th Floor
New York, NY 10019-6022
(212) 999-5800

*Counsel for Amici Curiae*
*Twitter, Inc. and Path, Inc.*

9th Circuit Case Number(s):        13-55678

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

### CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system on November 21, 2013.

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

*s/ Deborah Grubbs*

Deborah Grubbs